UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK VALDEZ LOPEZ,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | Case No. 1:16-cv-00842-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |

　　　　This matter is before the Court on the Plaintiff's complaint for judicial review of an unfavorable decision of the Commissioner of the Social Security Administration regarding his application for Disability Insurance Benefits and Supplemental Security Income. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Ninth Circuit.

　　　　The court, having reviewed the record, administrative transcript, the briefs of the parties, the applicable law, and having heard oral argument, finds as follows:

\\\

\\\

1

**A. Opinion of Dr. Ensom**

Plaintiff argues that the ALJ erred in failing to provide reasons for rejecting the opinion of Dr. Ensom. It is undisputed that the ALJ did not provide any reasons for rejecting any opinion by Dr. Ensom, although the ALJ did cite to certain of Dr. Ensom's treatment records. (AR 24-25).

Plaintiff conceded during the hearing that the only portion of Dr. Ensom's treating records that constitute a medical opinion regarding Plaintiff's limitations is Dr. Ensom's assignment of a GAF score. Dr. Ensom gave Plaintiff a GAF score of 50 on March 15, 2012 (AR 491, 696). Dr. Ensom gave Plaintiff a GAF score of 55 on May 3, 2012 (AR 487), September 9, 2013 (AR 670), and May 29, 2014 (AR 653). The parties disagree regarding the obligation of an ALJ to address such a GAF score.

Plaintiff points to an Administrative message that "We consider **a GAF rating as opinion evidence**." SSA Administrative Message 13066 (effective July 22, 2013). Plaintiff also cites to the unpublished 9th Circuit case of *Craig v. Colvin*, which stated, "[a]lthough GAF scores alone do not measure a patient's ability to function in a work setting, [*Garrison v. Colvin*, 759 F.3d 995, 1003 n. 4 (2014)], the Social Security Administration (SSA) has endorsed their use as evidence of mental functioning for a disability analysis. SSA Administrative Message 13066 ("AM–13066") (effective July 22, 2013)." 659 Fed.Appx. 381, 382 (9th Cir. 2016). The Ninth Circuit held that the ALJ in that case did not commit error by relying in part on a GAF score—but did not say it was error to fail to consider such evidence. *Id*. Moreover, it affirmed the ALJ for holding the Plaintiff in that case was *not* disabled in part due to the GAF score of 55, which is the same GAF score reported in the last three reports of Dr. Ensom. *Id*. at 383.

In a published case, the Ninth Circuit has described GAF scores as follows:

"A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert,* 159 F.3d 1161, 1164 n. 2 (9th Cir.1998). According to the DSM–IV, a GAF score between 41 and 50 describes "serious symptoms" or "any serious impairment in social, occupational, or school functioning." A GAF score between 51 to 60 describes "moderate symptoms" or any moderate difficulty in social, occupational, or school functioning." Although GAF scores, standing alone, do not control determinations of whether a person's mental impairments rise to the level of a disability (or interact with physical impairments to create a disability),

2

> they may be a useful measurement. We note, however, that GAF scores are typically assessed in controlled, clinical settings that may differ from work environments in important respects. *See, e.g., Titles II & XVI: Capability to Do Other Work–Themedical–Vocational Rules As A Framework for Evaluating Solely Nonexertional Impairments,* SSR 85–15, 1983–1991 Soc. Sec. Rep. Serv. 343 (S.S.A 1985) ("The mentally impaired may cease to function effectively when facing such demands as getting to work regularly, having their performance supervised, and remaining in the workplace for a full day.").

*Garrison v. Colvin*, 759 F.3d 995, 1003 n.4 (9th Cir. 2014). *See also Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998) ("A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment. *Diagnostic and Statistical Manual of Mental Disorders* 20 (3rd. ed, rev.1987). A GAF score of 55 indicates at least moderate symptoms or moderate difficulty in social, occupational, or social functioning.").

It is also worth noting that the Ninth Circuit squarely addressed this issue in an unpublished opinion as follows:

> The ALJ did not err in failing to address Dr. Caverly's GAF score, because a GAF score is merely a rough estimate of an individual's psychological, social, or occupational functioning used to reflect an individual's need for treatment, but it does not have any direct correlative work-related or functional limitations. *See Vargas v. Lambert,* 159 F.3d 1161, 1164 n. 2 (9th Cir.1998).
>
> We do not agree with Hughes that *Garrison v. Colvin,* 759 F.3d 995 (9th Cir.2014) supports her position because *Garrison* is factually distinguishable. The nurse practitioner in *Garrison* was the primary psychiatric care giver, who treated the claimant for over two years, producing numerous reports, which included not only GAF scores, but also identified functional limitations affecting the claimant's ability to work. *See id.* at 1002–05, 1014. In contrast, Dr. Caverly performed two psychiatric evaluations years apart and her 2009 report included only a GAF score, without identifying any corollary functional limitations.
>
> Even assuming the ALJ erred by failing to address Dr. Caverly's GAF score, any such error was harmless, because the ALJ assessed Hughes' mental impairment as severe, and the ALJ's residual functional capacity took into account Hughes' mental functional limitations, including moderate difficulties in social functioning, concentration, and persistence, by restricting her to simple, routine, repetitive tasks in a job where she could work independently with no more than occasional public interaction. *See Molina v. Astrue,* 674 F.3d 1104, 1122 (9th Cir.2012) (explaining that the ALJ's failure to discuss certain evidence was inconsequential to the ultimate disability determination). Aside from arguing incorrectly that her low GAF score mandated a finding that she could not function in a workplace on a

> sustained and regular basis, Hughes has not identified any additional limitations
> the ALJ should have imposed in light of Dr. Caverly's GAF score.

*Hughes v. Colvin*, 599 Fed.Appx. 765, 766 (9th Cir. 2015).

This Court reaches the same conclusion as *Hughes*. We do not find error in the failure to address the GAF score in this circumstances because it was "merely a rough estimate of an individual's psychological, social, or occupational functioning used to reflect an individual's need for treatment, but it does not have any direct correlative work-related or functional limitations." *Id*. The GAF score here was isolated and not part of a broader opinion regarding any corollary limitations. Finally, any error would be harmless because the score of 55 indicated only moderate symptoms or moderate difficulty in social, occupational, or social functioning, and the RFC adopted by the ALJ imposed such limitations. (AR 26, "Mentally, he can perform no more than simple, routine, repetitive tasks. He is able to use judgment related to only simple work-related decisions. He can tolerate occasional interaction with coworkers and the public"). In this way, the ALJ was correct in finding that "none of the claimant's treatment providers submitted an opinion detailing his ability to perform simple tasks or interact with others during the workday, or opining that he is unable to perform the activities set out in the residual functional capacity above." (AR 27).

**B. Opinion of Dr. Michiel**

Plaintiff also argues that the ALJ gave legally inadequate reasons for rejecting the opinion of Dr. Michiel.

Dr. Michiel examined Plaintiff on August 24, 2012. (AR 474-477). He concluded that "Based upon the evaluation and observation throughout the interview, I believe that the claimant is unable to maintain attention and concentration to carry out simple job instructions. The claimant is unable to relate and interact with coworkers, supervisors and the general public due to his paranoid ideation." (AR 477)

"The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician. As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted

opinion of an examining physician. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830–831 (9th Cir. 1995), *as amended* (Apr. 9, 1996) (internal citations omitted). Here, Dr. Michiel's opinion was contradicted by the State agency physicians Drs. Garcia and Amado. (AR 114, 178). Therefore, this Court looks to whether the ALJ gave specific and legitimate reasons supported by substantial evidence in the record for his rejection of Dr. Michiel's opinion.

The ALJ included the following evaluation of Dr. Michiels' opinion in his order:

> The undersigned accords minimal weight to the August 2013 psychological assessment from Ekram Michiel, M.D. (Exhibit 6F). Dr. Michiel found that the claimant was unable to sustain attention and concentration to perform simple tasks, and could not relate to others. The undersigned finds that Dr. Michiel's conclusions appear to be based primary on the claimant's subjective complaints, and do not fully acknowledge the effect of the claimant's alcohol use on his alleged symptoms. The undersign notes that Dr. Michiel classified the alcoholism as "in remission," even though records show that the claimant was engaging in ongoing heavy alcohol use before and after the evaluation (Exhibits 7F, p. 4; 10F, p. 6). The undersigned also finds noteworthy that the State agency psychological consultants reviewed Dr. Michiel's evaluation, but did not adopt Dr. Michiel's assessment of the claimant's mental functioning.

(AR 28).

Turning to the ALJ's first reason, Dr. Michiel does not state the specific basis for his opinion. He interviewed Mr. Lopez and also conducted certain examinations. The interviews included records of Mr. Lopez's subjective complaints, including Mr. Lopez saying "I have bipolar," explaining how he "started by have mood swings and anxiety" and "has panic attacks," "he hears voices," and "admitted to auditory and visual hallucinations, endorsed paranoid ideation." Indeed, Dr. Michiel notes "The source of the information for this examination was the claimant who was a fairly good historian." (AR 474). As for the examinations, some of them resulted in normal findings, (e.g. "The claimant was oriented to person, place and date," "The claimant was failry groomed, casually dressed with adequate personal hygiene. Gait normal"), and some resulted in impaired findings (e.g. "The claimant's recent memory impaired. He was unable to recall what he ate at his last meal."). The Court finds that the ALJ's reason that "Dr.

Michiel's conclusions appear to be based primary on the claimant's subjective complaints" is specific, legitimate and supported by substantial evidence.[1]

So too is the ALJ's reason "Dr. Michiel's conclusions . . . do not fully acknowledge the effect of the claimant's alcohol use on his alleged symptoms." The ALJ cites to instances in the record near in time to Dr. Michiel's evaluation indicating alcohol use in the context of Mr. Lopez having a history of alcoholism. (AR 484, indicating on August 2, 2012 "he is drinking less than in past; not daily but will not specify further," AR 517, indicating that on September 6, 2012 "he drank ½ pint of whiskey to improve pain but no relief"). It is also true that Dr. Michiel does not attempt to acknowledge any effect of alcohol on symptoms. Indeed, even though he notes that Mr. Lopez told him that "he was drinking a bottle of whiskey a day until a year ago when he switched to 10 beers a week," he diagnoses Plaintiff's alcoholism as "in early remission." There is thus substantial evidence supporting the ALJ's reasoning here as well.

**C. Ms. Lopez Third Party Function Report**

Plaintiff next argues that the ALJ erred in its treatment of a third party report by Mr. Lopez's ex-wife, Lydia Lopez.

To reject third-party reports of a claimant's impairments . . . an ALJ need only "give reasons that are germane to each witness." *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017).

Regarding this report, the ALJ found as follows:

The undersigned also considered the Third Party Function Reports that the claimant's ex-wife, Lydia Lopez, submitted (Exhibits 4E; 7E). In evaluating Ms. Lopez's statement, the undersigned contemplated the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence (Social Security Ruling 06-03p). Her statements essentially reaffirm the description of limitations that the claimant provided in disability filings and at the hearing, and do not establish that the claimant is disabled. She is not medically trained to make exacting observations as to dates, frequencies, types, and degrees of medical signs and symptoms or of the frequency or intensity of unusual moods or mannerisms, so the accuracy of her

---

[1] The Court is mindful that "Substantial evidence means more than a scintilla but less than a preponderance. Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion. Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart,* 278 F.3d 947, 954 (9th Cir. 2002) (internal quotations and citations omitted).

statements is questionable.  Most importantly the undersigned cannot give
            significant weight to these statements because they are not consistent with the
            opinions and observations by medical doctors in this case.  For example, the
            claimant reported significant improvement in his mood and anxiety with
            medications.

(AR 29). The Court finds that these reasons are sufficiently germane.

**D. Other Issues**

Plaintiff challenges the ALJ's failure to include in the RFC limitations regarding the amount of time Plaintiff needs to spend during each bathroom trip. The ALJ did include a limitation that "He requires convenient access to a bathroom" in the RFC. (AR 26).

"Residual functional capacity is an administrative finding reserved to the Commissioner." *Lynch Guzman v. Astrue*, 365 F. App'x 869, 870 (9th Cir. 2010) (citing 20 C.F.R. § 404.1527(e)(2)). The ALJ's RFC determination should be affirmed "if the ALJ applied the proper legal standard and his decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

The only basis for a further limitation was the Plaintiff's own testimony, which was discussed by the ALJ as follows:

> The claimant also complains of irritable bowel syndrome that causes up to 20
> bathroom visits each day.  While the records show that the claimant reported blood
> in his stool in June 2011, abdominal imaging was unremarkable (Exhibit 5F, pp. 2,
> 7).  The claimant complained of epigastric pain during a few treatment encounters
> (Exhibit 10F, pp. 77, 89), but records do not show he ever reported trouble with
> bowel incontinence to any physician.

(AR28-29). Moreover, the ALJ found that claimant was not credible, and Plaintiff does not challenge that finding on appeal. (AR 29-30).

The Court finds no legal error in the RFC on this issue.

Finally, Plaintiff notes that the ALJ posed hypotheticals that involved light work, and then concluded Plaintiff could in fact do medium work. However, the Court finds no error because a claimant who can perform medium work can also perform the lesser requirements of light work. Thus, the Vocational Expert's findings that Plaintiff could perform light work with certain restrictions supported the ALJ's finding that Plaintiff could perform medium work with those

restrictions.

**E. Conclusion**

Accordingly, the Court finds that the decision of the Commissioner of Social Security is supported by substantial evidence, and the same is hereby affirmed.

The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: **December 14, 2017**　　　　　　　/s/ *Eric P. Grog*
　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE